FILED

2020 Sep-14  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DIANNA TOON-LAPORTE** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE** |
| | ) | **NUMBER: _____** |
| **SUN LIFE ASSURANCE** | ) | |
| **COMPANY OF CANADA,** | ) | |
| | ) | |
| **Defendant** | ) | |

## COMPLAINT

Comes now the Plaintiff, Dianna Toon-Laporte, and hereby files her complaint against Sun Life Assurance Company of Canada.

## PARTIES

1.     The plaintiff, Dianna Toon-Laporte ("Mrs. Toon-Laporte"), is an insured under Group Long Term Disability Plan for employees of War Memorial Hospital identified as Group Insurance Policy 236594-001 ("The Plan"), who has been improperly denied disability benefits under the Plan.

2.     Defendant, Sun Life Assurance Company of Canada ("Sun Life"), is the Administrator of the Plan. Upon information and belief, Sun Life is a foreign corporation which conducts business generally in the State of Alabama and specifically within this District.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Mrs. Toon-Laporte brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).   This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by Sun Life as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mrs. Toon-Laporte's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mrs. Toon-Laporte, as an employee insured for disability, was supposed to be treated as a beneficiary by Sun Life as a statutory fiduciary. Instead, Sun Life has breached those duties and

victimized Mrs. Toon-Laporte by engaging in improper claim handling procedures. As described in more detail below, Sun Life has clearly engaged in arbitrary and capricious claims handling and Mrs. Toon-Laporte, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Mrs. Toon-Laporte is an insured under the Plan. Sun Life is the administrator of the Plan. The Plan provides insureds, like Mrs. Toon-Laporte, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.     At all relevant times, Mrs. Toon-Laporte was employed by War Memorial Hospital and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.     Mrs. Toon-Laporte, a woman fifty-seven (57) years of age, worked at War Memorial Hospital until her disabilities forced her to stop working on or about March 15, 2017.

8.     Mrs. Toon-Laporte was employed by War Memorial Hospital as a Registered Nurse, whose job duties required that she coordinate interdisciplinary functions and manage resources for quality patient care. This required licensure as a Registered Nurse and extensive knowledge in the area of medical and surgical nursing, and included performing thorough and accurate patient assessments, utilizing and maintaining medical equipment, developing individualized nursing

care plans, and administering direct nursing care. Job tasks entailed the ability to transfer up to 125 pounds; push and pull up to 350 pounds; stand and walk up to 90% of an assigned work shift; bend, stoop, and squat as required; reach overhead; and remember multiple messages, information, and task assignment. Hand/eye coordination and hand steadiness were essential to performing medical procedures, as were clear speech, reading, and hearing skills to communicate with patients and coworkers.

9.     Mrs. Toon-Laporte's medical disabilities include right knee osteoarthritis, chondral defect of the right femur, patellar chondromalacia, and history of right knee arthroscopy. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Mrs. Toon-Laporte unable to perform any job.

10.    At all relevant times, and prior to the termination of Mrs. Toon-Laporte's benefits, she was under the consistent care of her orthopedist, Dr. Shane M. Woolever ("Dr. Woolever") and primary care physician, Dr. Roberts Mackie ("Dr. Mackie").

11.    On March 24, 2017, a right knee MRI demonstrated patellar chondromalacia, partially ruptured popliteal cyst, and focal cartilage defect of the medial femoral articular cartilage.

12.     On May 9, 2017, Mrs. Toon-Laporte underwent right knee arthroscopy with chondroplasty to address her right knee osteochondral defect of the medial femoral condyle and chondromalacia patella.

13.     Prior to and following Mrs. Toon-Laporte's knee surgery, between March 22, 2017 and September 27, 2017, Dr. Woolever issued eight separate notes excusing Mrs. Toon-Laporte from work, restricting her from returning to her job as a nurse throughout November 2017.

14.     Dr. Woolever provided an Attending Physician's Statement on September 27, 2017 which documented a diagnosis of internal derangement of the right knee with patellar chondromalacia, partially ruptured popliteal cyst, focal cartilage defect, and effusion imaged on MRI, treated via Supartz injections. Dr. Woolever noted that Mrs. Toon-Laporte was unable to return to work.

15.     A second Attending Physician's Statement from Dr. Woolever on November 2, 2017 noted a diagnosis of right knee osteoarthritis and assessed Mrs. Toon-Laporte to be capable of occasional sitting and negligible walking, standing, bending, squatting, climbing, twisting, pushing, pulling, balancing, kneeling, and crawling.

16.     Mrs. Toon-Laporte was approved for LTD benefits from Sun Life on November 17, 2017 and received these benefits for the period between July 14, 2017 and December 5, 2017.

17.     Mrs. Toon-Laporte's LTD benefits were approved and paid from July 14, 2017 and December 5, 2017 because Sun Life determined that she was unable to perform the material and substantial duties of his occupation, as defined under the Plan.

18.     By letter dated November 17, 2017, Sun Life wrongfully terminated Mrs. Toon-Laporte's LTD benefits beyond December 5, 2017.

19.     The Plan at issue, governed by ERISA and relied upon to deny Mrs. Toon-Laporte's LTD benefits states, in part:

**Total Disability** or **Totally Disabled** means during the Elimination period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training, or experience.

20.     Using this test of disability, Sun Life found Mrs. Toon-Laporte disabled and approved her LTD benefits for nearly five months, as Mrs. Toon-Laporte's right knee osteoarthritis, chondral defect of the right femur, patellar chondromalacia, and history of right knee arthroscopy prevented her from performing the essential duties of her occupation.

6

21.    In its letter of November 17, 2017, Sun Life asserted that Mrs. Toon-Laporte's medical impairments were not expected to cause ongoing restrictions beyond December 5, 2017, one day prior to her next medical appointment. The termination of LTD benefits was based at least in part upon the paid review of Donna Eibye, RN, BSN ("Ms. Eibye").

22.    In her report completed November 15, 2017, Ms. Eibye cited Mrs. Toon-Laporte's treating orthopedist's office notes, placing particular emphasis on records dated July 19, 2017 and August 16, 2017 and representing these records to show medical improvement which contradicted ongoing impairment.

23.    Specifically, Ms. Eibye noted that "the overall exam is better" on July 19, 2017, and that on August 16, 2017, "despite that current report by the claimant of her improvement the MD wrote 'exquisite/severe tenderness over medial line and distal medial condyle.'"

24.    Dr. Woolever's July 19, 2017 office note documented, instead of improvement, Mrs. Toon-Laporte's complaints of ongoing right knee pain causing difficulty walking, noted slight pain through the medial joint line, and recorded the necessity of a medial unloader brace.

25.    Dr. Woolever's August 16, 2017 office note noted, instead of improvement, ongoing pain despite the use of an unloader brace and physical therapy, as supported by exquisite tenderness over the medial joint line and distal

medial femoral condyle of the right knee. Following this examination, Dr. Woolever voiced doubts as to Mrs. Toon-Laporte's capacity to return to her occupation as a nurse.

26.     The only mention of medical improvement in these notes was a statement by Mrs. Toon-Laporte that water therapy had provided some benefit; this therapy, however, is noted to have been discontinued by the time of her August 16, 2017 appointment with Dr. Woolever, and therefore no longer provided any continuous relief for her chronic knee pain.

27.     Despite a lack of documented improvement in the records, Ms. Eibye noted that "the claimant was doing well as of 7/19/17 and then suddenly, and no apparent physical changes, on 8/16/17 the pain was exquisite/severe with no apparent injury or cause." Sun Life echoed this stance in its November 17, 2017 letter that noted "it is opined by our medical consultant that records indicate you reported doing well as of 7/19/17 but at your 8/16/17 visit it is reported the pain was exquisite/severe with no apparent injury or cause reported."

28.     Despite the record showing the largely unchanged and ongoing nature of Mrs. Toon-Laporte's knee pain, Ms. Eibye characterized the August 16, 2017 examination as a "new onset of severe pain;" Ms. Eibye further questioned the veracity of this "new onset" of pain by noting that no imaging studies were carried

out to determine the source of this knee pain, and acknowledged only that "granted this is a chronic condition but this should have improved following the surgery."

29.    Ms. Eibye further asserted that no examination of Mrs. Toon-Laporte's knee was carried out following her August 16, 2017 appointment with Dr. Woolever, and that no examination was expected until December 6, 2017.

30.    In actuality, Mrs. Toon-Laporte attended five orthopedic appointments for Supartz injections between September 27, 2017 and October 25, 2017, as well as physical therapy sessions which spanned from May 24, 2017 to November 28, 2017. By the time of her discharge from physical therapy on November 28, 2017, Mrs. Toon-Laporte's therapist noted that she had reached a plateau at her current status and continued to experience right knee pain, restricted range of motion, and restricted gait pattern while requiring the use of a knee brace and remaining unable to work.

31.    Ms. Eibye acknowledged an upcoming appointment with Dr. Woolever on December 6, 2017 before determining that restrictions and limitations could not be supported past December 5, 2017. Although Ms. Eibye purported there to be no objective examinations since August 2017, Sun Life did not attempt to gather updated records from Dr. Woolever and instead rendered its decision on November 17, 2017, just a few weeks prior to this appointment.

32.     In her report, Ms. Eibye recounted Dr. Woolever's restrictions and limitations of occasionally sitting and never walking or standing, yet in her final determination Ms. Eibye noted that Mrs. Toon-Laporte was capable of frequent walking, standing, bending, reaching, twisting, pushing, pulling, lifting, carrying, and exerting up to fifty pounds of force from December 5, 2017 onward.

33.     Despite Dr. Woolever's repeated support of Mrs. Toon-Laporte's disability, no attempt was made to contact this physician for his medical opinion.

34.     Ms. Eibye did not speak with Dr. Woolever, or any of Mrs. Toon-Laporte's treating physicians, before rendering an opinion that was solely based upon the records alone and contradicted Mrs. Toon-Laporte's treating orthopedist.

35.     Sun Life relied on the paid reviewer's opinion over the opinion of Mrs. Toon-Laporte's treating providers, and by letter dated November 17, 2017, wrongfully terminated Mrs. Toon-Laporte's LTD benefits.

36.     At the time Sun Life terminated the LTD benefits on November 17, 2017, it had no information, from Ms. Eibye's paid review or otherwise, that showed Mrs. Toon-Laporte's medical condition had improved, when in fact, Mrs. Toon-Laporte's treating physicians opined that her condition continued to deteriorate.

37.     At all relevant times of Sun Life's review of Mrs. Toon-Laporte's claim, Sun Life had the contractual right to obtain better evidence of Mrs. Toon-Laporte's disability by ordering an independent medical examination.

38.    Rather than ordering Mrs. Toon-Laporte to sit for an independent medical examination, Sun Life relied on a paid record review to support its denial of LTD benefits.

39.    In a letter dated February 16, 2018, Mrs. Toon-Laporte appealed the termination of her LTD benefits Mrs. Toon-Laporte included with her appeal letter additional medical records outlining the decline of her condition, as well as statements from her husband, step-son, and coworkers.

40.    In support of her appeal, Mrs. Toon-Laporte submitted statements from her husband, Michael Laporte, and step-son, Patrick Laporte. Mr. Michael Laporte recounted his wife's physical decline from a healthy, active lifestyle to a largely sedentary and inhibited state due to severe knee pain. Mr. Michael Laporte noted that "Dianna's life significantly changed since the injury and her disability now affects almost everything she used to do and took for granted. I've noticed that many of her previous activities have ceased entirely because of her difficulty walking and trying to control pain."

41.    Mr. Patrick Laporte also noted a significant decline in Mrs. Toon-Laporte's physical state and functional capacity, stating "I have witnessed the transition from being a physically and emotionally strong and mobile woman, to her being physically impeded from regular habitual activities which undoubtedly led [to] a noticeable increase in psychological stress."

42.     Statements were also provided by Mrs. Toon-Laporte's coworkers, Nicole Oliver and Kathleen Allard, which were included in Mrs. Toon-Laporte's February 16, 2018 appeal and which outlined Mrs. Toon-Laporte's excellent work history and devotion to her occupation as a registered nurse.

43.     Janessa Copenhafer, PT, DPT, WCC also provided a statement for Mrs. Toon-Laporte's appeal, which recounted an extensive course of physical therapy; however, due to restrictions placed on her rehab protocol, Mrs. Toon-Laporte was eventually discharged from this physical therapy program before maximum medical improvement was reached.

44.     As part of her appeal, Mrs. Toon-Laporte included a return to work evaluation carried out by War Memorial Hospital Occupational Health on December 7, 2017. It was determined that "… based on the subjective complaints and clinically, the patient does not appear ready to return to the floor in a nursing capacity. The fact that she is experiencing balance issues and pain that would likely interfere with her ability to concentrate could create and atmosphere for mistakes or possible further injury."

45.     A second return to work evaluation took place with War Memorial Hospital Occupational Health on January 24, 2018, wherein Mrs. Toon-Laporte was advised to continue with physical therapy due to unrelieved knee pain and it was noted that "she will not return to work at this time."

46.     Scott M. Bartz, PA-C provided a statement on January 24, 2018 which noted that "Diana will continue to be off work while she is continuing with physical therapy." This statement further noted that Mrs. Toon-Laporte's condition would be monitored and reevaluated on a monthly basis.

47.     An Attending Physician's Statement from Dr. Mackie on February 1, 2018 noted osteoarthritis and chronic pain of the right knee which diminished Mrs. Toon-Laporte's capacity to perform activities such as walking, sitting, standing, bending, pushing, pulling, lifting, carrying, squatting, kneeling, crawling, climbing, twisting, or balancing.

48.     Dr. Mackie provided a note on February 9, 2018 stating that, due to her osteoarthritis and chronic pain of the right knee, "Pt. will remain off work for 3 mos. Reevaluate in 3 mos."

49.     Despite providing an abundance of evidence supportive of disability both before the termination of benefits and throughout the appeals process, Sun Life refused to award Mrs. Toon-Laporte's LTD benefits and issued its final termination by letter dated April 19, 2018.

50.     In its final termination letter dated April 19, 2018, Sun Life relied on the opinion of paid medical reviewer Dr. Gaetano Scuderi ("Dr. Scuderi").

51.     Dr. Scuderi, whom has never seen nor treated Mrs. Toon-Laporte, rendered an opinion that Mrs. Toon-Laporte was capable of functioning with no

restrictions or limitations and claimed that the opinions of Mrs. Toon-Laporte's own treating physicians were overly restrictive and unsupported.

52.    In his paid report, Dr. Scuderi noted that "there is no medical justification to place restrictions on activities of the claimant," citing normal examinations and imaging reports.

53.    Dr. Scuderi noted that a January 23, 2018 orthopedic evaluation from Dr. Joseph M. McGraw "continued to note the right knee was unremarkable;" in actuality, this treatment note documented a right antalgic gait as well as audible and palpable crepitus, tenderness at the medial joint line, and limited, painful range of motion of the right knee upon examination. An x-ray report from this appointment also demonstrated mild medial compartment arthritis of the right knee.

54.    Although Dr. Scuderi never treated Mrs. Toon-Laporte, spoke to Mrs. Toon-Laporte, or even attempted to speak with her treating physicians, this paid reviewer opined that Mrs. Toon-Laporte had no medically reasonable restrictions and now had the functionality to return to her previous occupation.

55.    Dr. Scuderi's opinion as reflected in the termination letter dated April 19, 2018 solely focused on Mrs. Toon-Laporte's physical functionality and failed to consider Mrs. Toon-Laporte's non-exertional limitations.

56.    Sun Life did not allow Mrs. Toon-Laporte an opportunity to review and respond to Dr. Scuderi's paid report, as Mrs. Toon-Laporte was only informed of

their involvement and Sun Life's reliance upon their opinion in the letter terminating benefits dated April 19, 2018. Rather than providing Mrs. Toon-Laporte an opportunity to respond, Sun Life informed Mrs. Toon-Laporte that she could "bring a civil action."

57.     As of this date, Mrs. Toon-Laporte has been denied benefits rightfully owed to her under the Plan.

58.     Mrs. Toon-Laporte has met and continues to meet the Plan's definition of disabled.

59.     Mrs. Toon-Laporte has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

60.     Sun Life's refusal to pay benefits has caused tremendous financial hardship on Mrs. Toon-Laporte.

## STANDARD OF REVIEW

61.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

62.     When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent

conflict of interest that mandates a heightened arbitrary and capricious standard of review.

63.    Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Sun Life or to any other entity who may have adjudicated Mrs. Toon-Laporte's claim. Therefore, the Court should review Mrs. Toon-Laporte's claim for benefits under a *de novo* standard.

64.    Upon information and belief, Sun Life evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

65.    Sun Life has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Mrs. Toon-Laporte's claim for benefits should be reviewed by this Court under a *de novo* standard.

66.    In the alternative, if the Court finds that Sun Life is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as Sun Life's decision to deny Mrs. Toon-Laporte's LTD benefits was arbitrary and capricious.

## **DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT**

67.    Sun Life has wrongfully denied LTD benefits to Mrs. Toon-Laporte, in violation of the policy provisions and ERISA, for the following reasons:

(a) Mrs. Toon-Laporte is totally disabled, in that she is prevented from performing the material and substantial duties of her occupation;

(b) Mrs. Toon-Laporte is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) Sun Life failed to accord proper weight to the evidence in the administrative record showing that Mrs. Toon-Laporte is totally disabled;

(d) Sun Life's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) Sun Life failed to allow Mrs. Toon-Laporte a right to access information upon which it relied to make a final determination, and failed to allow Mrs. Toon-Laporte an opportunity to respond to said information, before it made a final determination on her claim for LTD benefits;

(f) Sun Life failed to obtain and consider relevant information pertaining to Mrs. Toon-Laporte's disability before it made a determination on her claim for LTD benefits;

(g) Sun Life wrongfully denied Mrs. Toon-Laporte a full, fair and

impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(h) Sun Life failed to give proper weight to Mrs. Toon-Laporte's own accounts regarding the debilitating effects of her pain;

(i) Sun Life ignored the records and opinions of Mrs. Toon-Laporte's treating physicians which show that Mrs. Toon-Laporte is totally disabled, and instead based its decision to deny benefits on its internal review by Sun Life staff members and its paid reviewers, who had never seen or treated Mrs. Toon-Laporte, spoke with her treating physicians about the nature of her disability, and who were not as qualified as Mrs. Toon-Laporte's treating physicians to formulate opinions regarding the nature and extent of her disability;

(j) Sun Life failed to exercise reasonable flexibility in its claims review process to assure Mrs. Toon-Laporte a full, fair review, well-reasoned, and principled of her claim;

(k) Sun Life administered Mrs. Toon-Laporte's claim for LTD benefits while acting under an inherent and substantial conflict of interest in

that Sun Life served as both fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Mrs. Toon-Laporte's interest in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision maker, free of such conflict of interest, would;

(l) Sun Life made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(m)   Sun Life acted in bad faith by denying Mrs. Toon-Laporte's claim based upon the inability of Sun Life's paid reviewers to find Mrs. Toon-Laporte disabled, and otherwise failed to administer the Plan honestly, fairly, and in good faith, and to at all times act in Mrs. Toon-Laporte's best interests;

(n) Sun Life denied Mrs. Toon-Laporte's benefits without the support of any new information that altered in some significant way the previous decision over nearly five months to pay LTD benefits to Mrs. Toon-Laporte;

(o) Sun Life terminated Mrs. Toon-Laporte's benefits without the support of any new information that showed improvement in Mrs.

Toon-Laporte's medical condition, when in fact, her treating physicians opined that her condition continued to deteriorate;

(p) Sun Life failed to support the termination of benefits with substantial evidence;

(q) Sun Life imposed a standard not required by the Plan's provisions, by requiring objective evidence of Mrs. Toon-Laporte's subjective medical conditions where such evidence cannot be reasonably provided;

(r) Sun Life denied Mrs. Toon-Laporte's claim for a lack of objective medical evidence when Mrs. Toon-Laporte has provided ample evidence, both objective and subjective, of a disability and Sun Life has neither identified any objective evidence that Mrs. Toon-Laporte could have supplied to support the claim and has not had Mrs. Toon-Laporte undergo an independent medical examination or a similar in-person probative procedure to test the validity of her complaints;

(s) Sun Life failed to consider Mrs. Toon-Laporte's non-exertional limitations caused by her disability, such as her ability to regularly attend work and the effect her disability has on her concentration,

persistence, and pace when performing the material duties of her occupation;

(t) Sun Life's termination of Mrs. Toon-Laporte's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Mrs. Toon-Laporte's treating physicians;

(u) Sun Life wrongfully denied Mrs. Toon-Laporte's LTD benefits in such other ways to be shown through discovery and/or hearing.

68.    As a result of the foregoing, the relief to which Mrs. Toon-Laporte is entitled includes: (1) monthly LTD income benefits to Mrs. Toon-Laporte, (2) payment of back benefits from  December 6, 2017, to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress Sun Life's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

## COUNT ONE
## ERISA (Claim for Benefits Owed under Plan)

69.    Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

70.     At all times relevant to this action, Mrs. Toon-Laporte was a participant of the Plan underwritten by Sun Life and issued to War Memorial Hospital and was eligible to receive disability benefits under the Plan.

71.     As more fully described above, the termination and refusal to pay Mrs. Toon-Laporte's benefits under the Plan for the period from at least on or about December 6, 2017 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Mrs. Toon-Laporte constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.     A judgment ordering the applicable standard of review in this case is *de novo*;

2.     A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3.     In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that

Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.    Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Mrs. Toon-Laporte's LTD benefits, that Mrs. Toon-Laporte is entitled to a continuation of future LTD benefits form Defendant pursuant to the Plan;

5.    Declaratory  and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff, enjoining Defendant from further violations of its fiduciary duties, and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.    A judgment ordering Defendant to pay Mrs. Toon-Laporte's LTD benefits from December 6, 2017 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.    An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.    For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 14th day of October, 2020.


                              /s/ Peter H. Burke_____

Peter H. Burke (ASB-1992-K74P)
PBurke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone:  205-930-9091
Fax:   205-930-9054

*Attorney for Plaintiff Dianna Toon-Laporte*

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

CT Corporation System
Sun Life Assurance Company of Canada
2 North Jackson Street
Suite 605
Montgomery, AL  36104